1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAO TAI ELECTRONICS CO., LTD, a Taiwanese corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>LEDUP ENTERPRISE, INC., a California corporation; LOWE'S HIW, INC., a Washington Corporation; THE HOME DEPOT U.S.A., INC., a Delaware corporation; MARTHA STEWART LIVING OMNIMEDIA, INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>    Defendants. | CASE NO.:  CV12-10137 R-MRW<br><br>**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF GRANT OF SUMMARY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 7,301,287**<br><br>Hon. Manuel L. Real<br><br><br>[Action filed: November 28, 2012] |

## STATEMENT OF FACTS AND CONCLUSIONS OF LAW

Defendant Lowe's HIW, Inc., now known as "Lowe's Home Centers, LLC" ("Lowe's"), filed its Motion for Summary Judgment of Invalidity of U.S. Patent No. 7,301,287 ("the '287 patent" or the "Patent-at-Issue") on January 6, 2014 ("Motion"). Defendant LedUp Enterprise, Inc. ("LedUp") subsequently joined Lowe's Motion. On February 3, 2014, the Court found asserted claims 1-5, 7, and 8 of the '287 patent to be invalid under 35 U.S.C. § 102(b), and granted Lowe's Motion for Summary Judgment of Invalidity.

The Findings of Fact Not Genuinely Disputed and Conclusions of Law are set forth below.

## I.    THE PARTIES

1.    Defendant Lowe's is a North Carolina corporation with a principal place of business in North Carolina.

2.    Defendant LedUp is a California corporation with a principal place of business in California.

3.    Plaintiff Chao Tai Electronics Co., Ltd. ("Chao Tai") is a Taiwan corporation with a principal place of business in Taipei, Taiwan, Republic of China. Chao Tai purports to be the Assignee of the '287 patent.

## II.    THE HISTORY OF THE CASE

4.    On November 28, 2012, Chao Tai filed its Original Complaint of Patent Infringement against Lowe's, LedUp, Home Depot U.S.A., Inc., Martha Stewart Living Omnimedia, Inc., and Does 1 through 10 inclusive (Dkt. No. 1).

5.    On February 19, 2013, Chao Tai filed its First Amended Complaint against Lowe's, LedUp, Home Depot U.S.A., Inc., Martha Stewart Living Omnimedia, Inc., and Does 1 through 10 inclusive (Dkt. No. 8).

6.    On April 12, 2013, LedUp filed its answer, affirmative defenses, and counterclaims (Dkt. Nos. 25 and 35), and Lowe's filed its answer, affirmative defenses, and counterclaims (Dkt. No. 34).

7.     On May 2, 2013, Chao Tai filed its Answer to Lowe's counterclaims (Dkt. No. 41) and LedUp's counterclaims (Dkt. No. 44).

8.     On January 6, 2014, Lowe's and LedUp each filed a Motion for Summary Judgment of Invalidity (Dkt. Nos. 57 and 58).  LedUp joined Lowe's Motion on January 7, 2014 (Dkt. No. 62).

9.     Dr. E. Fred Schubert, Professor of Electrical Engineering at Rensselaer Polytechnic Institute, provided a Declaration in support of Lowe's Motion for Summary Judgment (Dkt. No. 57-4).

10.     Dr. Schubert's role as an expert was disclosed in accordance with Federal Rule of Civil Procedure 26(a), and his expert report was served on December 3, 2013, in accordance with Federal Rule of Civil Procedure 26(a)(2)(C).

11.     Dr. Schubert is qualified to offer expert opinion and testimony in this matter, and Chao Tai made no challenge to his qualifications.

12.     On January 13, 2014, Chao Tai filed its Opposition to Lowe's Motion (Dkt. No. 64), and attached an Affidavit of its corporate representative, Mr. Cheng Sheng Yang (Dkt. No. 64-2).

13.     Chao Tai failed to provide an expert declaration in opposition to Lowe's Motion.

14.     Pursuant to Local Rule 56-2, Chao Tai was obligated to file a "'Statement of Genuine Disputes' setting forth all material facts as to which it is contended there exists a genuine dispute necessary to be litigated." C.D. Cal. L.R. 56-2.  According to Local Rule 56-3, the material disputed facts must be both: (a) included in the "Statement of Genuine Disputes" and (b) controverted by declaration or other written evidence filed in opposition to the motion.  C.D. Cal. L.R. 56-3.

15.     While Chao Tai generally stated that it disputed many of the facts, it cited no declaration or written report in doing so.  *See* Pl. SDF (Dkt. No. 64-1).

16.     Chao Tai failed to file an Opposition to the separate Motion for Summary Judgment filed by LedUp.

[PROPOSED] STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW IN SUPPORT OF SUMMARY JUDGMENT OF INVALIDITY

1    17.    On January 16, 2014, Lowe's and LedUp each filed a Reply to Chao

2    Tai's Opposition to Lowe's Motion (Dkt. Nos. 69 and 70).

3    18.    A hearing was held before this Court on February 3, 2014, whereupon the

4    Court granted Lowe's Motion for Summary Judgment of invalidity of the '287 patent.

5    **III.    THE '287 PATENT**

6    **A.    The '287 Patent Specification**

7    19.    The '287 patent issued from U.S. Patent Application No. 11/624,233,

8    filed on January 18, 2007.  The '287 patent "relates to a high power light string device

9    and, more particularly, to a light string device composed of LEDs."  '287 patent,

10   Abstract.  According to the '287 patent, one objective of the described techniques "is

11   to provide a high power light string device that two power adaptors are respectively

12   disposed in a plug and a tail receptacle to simplify the whole light string device so as

13   to enhance the decorating effect and prevent from destroying the delicacy of the whole

14   light string device."  *Id*. at 1:37-42.  Another objective of the described techniques "is

15   to provide a high power light string device, which makes use of a plurality of LEDs to

16   form a light string structure with high efficiency and power saving."  *Id*. at 1:43-46.

17   The '287 patent provides that these objectives are achieved through a "high power

18   light string device 20 [that] comprises a plug 22, a tail receptacle 26, and an LED

19   string 28."  *Id*. at 2:9-11.

20   20.    Referring to FIG. 3, which illustrates "an internal structure diagram of

21   the present invention," the '287 patent explains that "a power adapter 32 [is] disposed

22   in the plug 22" and that "[t]he power adapter 32 converts an AC voltage through the

23   plug blade set 24 to a high DC voltage."  *Id*. at 2:21-27.  The '287 patent further

24   provides that "[a]nother power adaptor 34 . . . [is] disposed in the tail receptacle 26."

25   *Id*. at 2:2-3 and 27-28.  "The plug 22 and the tail receptacle 26 are driven by the same

26   voltage such as 110 V or 220 V."  *Id*. at 2:15-17.  "The power adapter 34 receives the

27   AC voltage, such as 110 V or 220 V, through the plug blade set 24 via the electric

28   wires 251 and 252 to convert this AC voltage to a low DC voltage."  *Id*. at 2:29-32.

3



**FIG. 3 of the '287 Patent**

21.     To achieve its stated objective, the '287 patent describes and claims a full-wave split-bridge rectifier.  *See* Schubert Decl. at ¶¶ 26 and 42; *see also* '287 patent, FIG. 3.  As shown in FIG. 3 of the '287 patent, the full-wave split-bridge rectifier comprises: a first pair of rectifying diodes in the plug 22, which the '287 patent refers to as "power adaptor 32," and a second pair of rectifying diodes in the tail receptacle, which the '287 patent refers to as "power adaptor 34."  *See* Schubert Decl. at ¶¶ 26 and 42; *see also* '287 patent, FIG. 3.

22.     FIG. 3 of the '287 patent illustrates the first pair of rectifying diodes and the second pair of rectifying diodes using standard rectangular representations having cathode marks.  The cathode marks on the two pairs of rectifying diodes provide an indication of the current flow, as well as the relative (*i.e.*, high and low) voltage, between the plug and the tail receptacle.  *See* Schubert Decl. at ¶¶ 25, 26, and 42.

23.     As illustrated in FIG. 3, the '287 patent shows the first pair of rectifying diodes contained in the plug are electrically connected to the light string through the

cathode, and the second pair of rectifying diodes contained in the tail receptacle are electrically connected to the light string through the anode. *See id.* at ¶ 43.

24.    The full-wave split-bridge rectifier disclosed in the '287 patent converts an input alternating current (AC) voltage to an output direct current (DC) voltage that is supplied to the LED light string 28 through the two pairs of rectifying diodes (*i.e.*, power adaptors 32 and 34). *See id.* at ¶ 44. Power adaptor 32 (*i.e.*, the first pair of rectifying diodes) converts an input AC voltage to an output DC voltage having a positive polarity, and power adaptor 34 (*i.e.*, the second pair of rectifying diodes) converts an input AC voltage to an output DC voltage having a negative polarity. *See id.*

25.    In the '287 patent, the current flows from the plug through the LEDs to the tail receptacle. *See id.* Thus, the power adaptor 32 of the plug has a relatively higher DC voltage, whereas the power adaptor 34 of the tail receptacle has a relatively lower DC voltage. *See id.*

26.    Therefore, for the "LED string" of the '287 patent "to be turned on to emit light," as described and claimed, the '287 patent requires both power adaptor 32 and power adaptor 34 to operate cooperatively. *See id.*

**B.    Prosecution Of The '287 Patent**

27.    During its initial prosecution before the United States Patent and Trademark Office ("USPTO"), the '287 patent was issued without any rejections.

28.    On June 27, 2011, however, a third-party requestor (TPR) submitted an *ex parte* request for the USPTO to reexamine the '287 patent.

29.    The USPTO granted the *ex parte* reexamination request on August 4, 2011, and mailed an Office Action on December 14, 2011, rejecting all of claims 1-8 of the '287 patent. The December 14, 2011 Office Action incorporated the claim charts submitted by the TPR for the details of the claim rejections. In sum, the December 14, 2011 Office Action rejected claims 1-8 of the '287 patent under 35 U.S.C. § 102(e) as being anticipated by U.S. Patent No. 7,377,802 to Allen ("Allen

5

'802"); rejected claims 1-5, 7, and 8 of the '287 patent under 35 U.S.C. § 102(b) as being anticipated by U.S. Patent No. 6,972,528 to Shao ("Shao"); and rejected claim 6 of the '287 patent under 35 U.S.C. § 103(a) as being obvious over Shao and Allen '802.

30.     On February 6, 2012, Chao Tai filed a Reply to the December 14, 2011 Office Action and made various arguments as why the Shao patent did not anticipate the '287 patent.

31.     The USPTO relied on the arguments made by Chao Tai and, on April 18, 2012, issued a Notice of Intent to Issue *Ex Parte* Reexamination Certificate ("Notice").

## C.     Asserted Claims

32.     In this action, Chao Tai asserted independent claim 1 and dependent claims 2-5, 7, and 8 of the '287 patent.

33.     Independent claim 1 recites the following:

1.     A high power light string device comprising:

a plug having a first plug blade set and a first power adaptor, wherein said first power adaptor is disposed in said plug to convert an AC voltage through said first plug blade set to a high DC voltage;

a tail receptacle having a conducting strip set and a second power adaptor converting said AC voltage through said first plug blade set to a low DC voltage; and

at least an LED string having a first end and a second end, said first end being connected to said first power adaptor to receive said high DC voltage and said second end being connected to said second power adaptor to receive said low DC voltage so that said LED string is turned on to emit light.

34.     Dependent claim 2 recites the following:

2.     The high power light string device as claimed in claim 1 wherein said conducting-strip set is electrically plugged by a second plug blade set of a second plug.

35.     Dependent claim 3 recites the following:

6

3.     The high power light string device as claimed in claim 1, wherein said conducting-strip set is electrically connected to said second power adaptor.

36.     Dependent claim 4 recites the following:

4.     The high power light string device as claimed in claim 1, wherein said conducting-strip set is electrically connected to said first plug blade set.

37.     Dependent claim 5 recites the following:

5.     The high power light string device as claimed in claim 1, wherein said plug and said tail receptacle are driven at the same voltage.

38.     Dependent claim 7 recites the following:

7.     The high power light string device as claimed in claim 1, wherein said plug and said tail receptacle are made of plastic material.

39.     Dependent claim 8 recites the following:

8.     The high power light string device as claimed in claim 1, wherein each LED of said LED string is selected among a white LED, a red LED, a blue LED, a green LED, a yellow LED, and a LED of another color.

## IV.   LEGAL PRINCIPLES OF SUMMARY JUDGMENT

40.     Summary judgment "should be rendered" where "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

41.     A factual issue is genuine if a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'").

42.     The court "must 'view the facts and draw reasonable inferences in the light most favorable to the party opposing the [summary judgment] motion.'" *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010); *see also Scott v. Harris*, 550 U.S. 372, 378 (2007) (holding that where the moving and nonmoving parties' versions

7

of events differ, courts are required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party).

43.    The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and identify specific facts through admissible evidence that show a genuine issue for trial.  *Id.*; Fed. R. Civ. P. 56(c).  "However, when the facts, as alleged by the non-moving party, are unsupported by the record such that no reasonable jury could believe them, [the court] need not rely on those facts for purposes of ruling on the summary judgment motion."  *Wilkinson*, 610 F.3d at 550 (citing *Scott*, 550 U.S. at 280 (2007)).

44.    Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.  *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).  "A party cannot create a genuine issue of material fact simply by making assertions in its legal papers." *Nguyen v. Radient Pharm. Corp.*, 946 F. Supp. 2d 1025 (C.D. Cal. 2013) (citing *S.A. Empresa De Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982)).  "Rather, there must be specific, admissible evidence identifying the basis for the dispute."  *Id.*

45.    Self-serving declarations that contradict prior, sworn testimony may be disregarded.  "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony."  *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009) (quoting *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991)).  Known as the "sham affidavit" rule, this rule is necessary to maintain the integrity of the summary judgment procedure.  *See id.*  Sham testimony is "testimony that flatly contradicts earlier testimony in an attempt to 'create' an issue of fact and avoid summary judgment." *Kennedy*, 952 F.2d at 266.

# V.    LEGAL PRINCIPLES OF ANTICIPATION

46.    "Challenges to the validity of claims, whether regularly issued [or] issued after a reexamination pursuant to 35 U.S.C. §§ 301-307 . . . must meet the clear and convincing standard of persuasion." *Superior Fireplace Co. v. Majestic Prods. Co.*, 270 F.3d 1358, 1367 (Fed. Cir. 2001) (citing *Kaufman Co. v. Lantech, Inc.*, 807 F.2d 970, 973-74 (Fed. Cir. 1986)).  "Whether a reference was previously considered by the PTO, the burden of proof is the same: clear and convincing evidence of invalidity . . . .  The burden does not suddenly change to something higher–'extremely clear and convincing evidence' or 'crystal clear and convincing evidence'–simply because the prior art references were considered by the PTO." *Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1260 (Fed. Cir. 2012).

47.    Prior art under § 102(b) includes subject matter that was "patented or described in a printed publication in this or a foreign country . . . more than one year prior to the date of the application for patent in the United States."  35 U.S.C. § 102(b).

48.    A patent is anticipated if a single prior art reference discloses each and every limitation of the claimed invention, either expressly or inherently. *Schering*, 339 F.3d at 1377 (Fed. Cir. 2003).  "Under the principles of inherency, if the prior art necessarily functions in accordance with, or includes, the claimed limitations, it anticipates." *Atlas Powder Co. v. IRECO Inc.,* 190 F.3d 1342, 1347 (Fed. Cir. 1999).

49.    Courts have an independent obligation to review the validity of patents, and are not bound by the determination of an examiner. *See Fromson v. Advance Offset Plate, Inc.*, 755 F.2d 1549, 1555 (Fed. Cir. 1985) (stating that a patent examiner's finding in an *ex parte* proceeding, although accorded deference in district court litigation, is never binding on the court); *Pfizer v. Apotex, Inc.*, 480 F.3d 1348, 1359-60 (Fed. Cir. 2007); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1534 (Fed. Cir. 1983).

50.    In performing its review, this Court has accorded the USPTO's determination the necessary deference, but based on the undisputed declaration of Dr. Schubert, the clear admissions of Chao Tai's corporate representative, and the full record before the Court, which was not available to the examiners at the USPTO, the Court concludes that no trier of fact could reasonably conclude that the Shao patent does not anticipate the claims of the '287 patent.

51.    To the extent that Chao Tai's corporate representative attempted to recant his deposition testimony through a later-filed declaration served in opposition to Lowe's Motion, the Court finds that the deposition testimony was clear and constitutes a binding admission, and that the declaration amounts to inadmissible, sham testimony offered solely in an attempt to create a triable fact.

## VI.    THE ASSERTED CLAIMS ARE INVALID BECAUSE THEY ARE ANTICIPATED BY U.S. PATENT NO. 6,972,528 TO SHAO

52.    U.S. Patent No. 6,972,528 to Chilliang Shao *et al*. ("Shao"), issued December 6, 2005, from an application filed April 29, 2004.

53.    It is undisputed that Shao is prior art to the '287 patent because it issued more than one year before the filing date of the '287 patent.  *See* 35 U.S.C. § 102(b).

54.    Chao Tai has conceded that all elements of claims 1-5, 7, and 8 of the '278 patent are disclosed by Shao except Chao Tai argues that "Shao does not disclose a first plug blade set and a first power adaptor, wherein said first power adaptor is disposed in said plug to convert an AC voltage through said first plug blade set to a high DC voltage, or a tail receptacle having a conducting strip set and a second power adaptor converting said AC voltage through said first plug blade set to a low DC voltage." *See*, *e.g.*, Pl. SDF (Dkt. No. 64-1) at ¶¶ 47, 50, 53, 56, 59, 62, and 65.

55.    As explained below, the Court finds that Shao discloses each and every limitation of claim 1 of the '287 patent, either expressly or inherently.

56.    Shao shows and discloses a high powered light string device with a full-wave split-bridge rectifier having two pairs of rectifying diodes (*i.e.*, two power

1   adaptors) located in a front plug and a tail receptacle, respectively, for powering a set

2   of LED lights.  *See* Schubert Decl. at ¶¶ 56, 57, 60, 61, 66, 67, 71, 72, 77, 82, and 85.

3       57.   Shao discloses "**[a] high power light string device**," as recited in

4   independent claim 1.  Shao, which is related to "the field of decorative lighting,"

5   discloses "an improved structure for an LED lighting chain."  Shao at 1:8-10 and 53-

6   54.  Shao generally discloses that "the present invention comprises a front plug 10, an

7   AC/DC converter socket comprising four rectifying diodes 31, 32, 33, and 34, and at

8   least one LED serial set 30," that "can comprise a plurality of LEDs 40 connected

9   serially."  *Id*. at 2:45-49.  The input to Shao's light string is disclosed as "110 VAC or

10  220 VAC," which is "high power," within the scope and meaning of the '287 patent.

11  *See*, *e.g.*, *id*. at 2:56; *see also* Schubert Decl. at ¶ 57.  Chao Tai concedes that Shao

12  discloses this element.  *See* Pl. SDF (Dkt. No. 64-1) at ¶ 35.

13      58.   Shao discloses "**a plug having a first plug blade set and a first power**

14  **adaptor**," as recited in independent claim 1.  Shao discloses "a front plug 10" that

15  "can be a common household plug that is connected to a source voltage (110 VAC or

16  220 VAC)."  *Id*. at 2:46 and 55-56.  A common household plug inherently has a "plug

17  blade set" that allows it to connect to a source voltage, within the scope and meaning

18  of the '287 patent.  *See* Schubert Decl. at ¶ 60.  Referring to FIG. 3, Shao further

19  discloses that "the present invention comprises a front plug 10, an AC/DC converter

20  socket comprising four rectifying diodes 31, 32, 33, and 34, and at least one LED

21  serial set 30."  Shao at 3:45-48.  According to Shao, "[t]he rectifying diodes 31, 32, 33,

22  and 34 can be divided into two groups, with each group including two rectifying

23  diodes."  *Id*. at 3:1-3.  "In one embodiment [of Shao], the two rectifying diodes of the

24  first group 31 and 32 may be combined with the front plug to form a package 70 and

25  72."  *Id*. at 3:8-10.  The first pair of rectifying diodes 31 and 32 of Shao form a "first

26  power adaptor," within the scope and meaning of the '287 patent.  *See* Schubert Decl.

27  at ¶ 61.

28

59.   Chao Tai's corporate representative, Mr. Chen Sheng Yang, confirmed that the arrangement of the two rectifying diodes in the plug of Shao was equivalent to the first power adaptor of the '287 patent, and that the Shao power adaptor was capable of converting AC current to DC current.  *See* Exh. I to Lowe's Reply (Yang Deposition Tr. (Dec. 10, 2013)) at 181:12-22 ("Q. Box A, that would be equivalent to the first power adapter in the 287 Patent? A. Correct.") (Dkt. No. 70-6); *see also* Exh. F to Lowe's Motion (Exhibit 13 to Yang Deposition (Dec. 10, 2013)) (Dkt. No. 57-3).

60.   Shao discloses "**wherein said first power adaptor is disposed in said plug to convert an AC voltage through said first plug blade set to a high DC voltage**," as recited in independent claim 1.  As illustrated in FIG. 3 of Shao, the first power adaptor package 72 is disposed within the plug 10.  *See* Schubert Decl. at ¶ 66. Referring to FIG. 3 of Shao, the layout of the two rectifying diodes 31 and 32 in the plug 72 shows that the polarity of the light string at the plug is negative.  *See* Schubert Decl. at ¶ 67.   This is further supported by the "negative" sign placed near the connection of the LED serial set 30 and the two rectifying diodes 31 and 32 in FIG. 3 of Shao.  *See id*.  Shao, however, also explains that "the connection method can be different from what is shown in FIG. 3 and FIG. 4."  Shao at 3:20-21.  According to Shao, "[t]he position of the rectifying diodes 31 and 32 of the first group can be changed to the position of those of the second group 33 and 34, and vice visa," and "if this is the case, the direction of the positive and negative ends of LEDs in the LED serial set should also be changed correspondingly."  *Id*. at 3:22-26.  In Shao's alternate configuration, the polarity of the LED light string at the plug would be positive.  *See* Schubert Decl. at ¶ 67.  Thus, in Shao's alternate configuration, the power adaptor at the plug would convert an input AC voltage to a high DC voltage, within the scope and meaning of the '287 patent.  *See id*.

61.   Chao Tai's corporate representative, Mr. Chen Sheng Yang, confirmed that the arrangement of the two rectifying diodes in the plug of Shao was equivalent to the first power adaptor of the '287 patent, and that the Shao power adaptor was

12

capable of converting AC current to DC current.  *See* Exh. I to Lowe's Reply (Yang Deposition Tr. (Dec. 10, 2013)) at 181:12-20 (Dkt. No. 70-6); *see id.* at 182:20-22 ("Q. Box A, that would be equivalent to the first power adapter in the 287 Patent? A. Correct."); *see also* Exh. F to Lowe's Motion (Exhibit 13 to Yang Deposition (Dec. 10, 2013)) (Dkt. No. 57-3).

62.    Shao discloses "**a tail receptacle having a conducting strip set and a second power adaptor disposed interiorly**," as recited in independent claim 1.  In Shao, "the device may also include a rear plug 20 that is a common household socket, coupled in parallel to the front plug to enable multiple light strings to be connected to each other from end to end."  Shao at 2:57-60.  The rear plug of Shao is a "tail receptacle," within the scope and meaning of the '287 patent.  In addition, a rear plug that is a common household socket inherently requires a conducting strip set disposed interiorly.  *See* Schubert Decl. at ¶ 71.

63.    Referring again to FIG. 3, Shao discloses that "the present invention comprises a front plug 10, an AC/DC converter socket comprising four rectifying diodes 31, 32, 33, and 34, and at least one LED serial set 30."  Shao at 3:45-48.  According to Shao, "[t]he rectifying diodes 31, 32, 33, and 34 can be divided into two groups, with each group including two rectifying diodes."  *Id.* at 3:1-3.  "In one embodiment, the two rectifying diodes of the second group can be combined with the rear plug 20 to form a package 62 and 66."  *Id.* at 3:17-19.  The second pair of rectifying diodes 33 and 34 form a power adaptor, within the scope and meaning of the '287 patent.  *See* Schubert Decl. at ¶ 72.

64.    Chao Tai's corporate representative, Mr. Chen Sheng Yang, confirmed that the arrangement of two rectifying diodes in the opposite plug in Shao was equivalent to the second power adapter in the '287 patent.  Exh. I to Lowe's Reply (Yang Deposition Tr. (Dec. 10, 2013)) at 182:23-25 (Q. And Box B would be equivalent to the second power adapter in the 287 Patent? A. Correct.") (Dkt. No. 70-

13

6); *see also* Exh. F. to Lowe's Motion (Exhibit 13 to Yang Deposition (Dec. 10, 2013)) (Dkt. No. 57-3).

65. Shao discloses "**said second power adaptor converting said AC voltage through said first plug blade set to a low DC voltage**," as recited in independent claim 1. Referring to FIG. 3, the layout of the two rectifying diodes 33 and 34 in the rear receptacle 20 of Shao shows that the polarity at the rear receptacle is positive. This conclusion is further supported by the "positive" sign placed in FIGS. 3 and 4 near the connection of the LED serial set 30 and the two rectifying diodes 33 and 34. *See* Schubert Decl. at ¶ 77. However, as explained above, Shao also discloses that "the connection method can be different from what is shown in FIG. 3 and FIG. 4." Shao at 3:20-21. According to Shao, "[t]he position of the rectifying diodes 31 and 32 of the first group can be changed to the position of those of the second group 33 and 34, and vice visa," and "if this is the case, the direction of the positive and negative ends of LEDs in the LED serial set should also be changed correspondingly." *Id*. at 3:22-26. In Shao's alternate configuration, the polarity of the light string at the rear receptacle would be negative. *See* Schubert Decl. at ¶ 77. Thus, in Shao's disclosed alternate configuration, the power adaptor at the rear receptacle would convert an input AC voltage to a low DC voltage, within the scope and meaning of the '287 patent. *See id*.

66. Mr. Chen Sheng Yang, Chao Tai's corporate representative, confirmed that Shao's arrangement of two rectifying diodes in the opposite plug is equivalent to the second power adaptor in the '287 patent, and that Shao's second power adaptor is capable of converting AC current to DC current. *See* Exh. I to Lowe's Reply (Yang Deposition Tr. (Dec. 10, 2013)) at 181:12-22; *see id*. at 182:23-25 (Q. And Box B, that would be equivalent to the second power adapter in the 287 Patent? A. Correct."); *see also* Exh. F. to Lowe's Motion (Exhibit 13 to Yang Deposition (Dec. 10, 2013)) (Dkt. No. 57-3).

67. Shao discloses "**at least an LED string having a first end and a second end**," as recited in independent claim 1. For example, Shao discloses that "[t]he LED serial set can be connected between the negative end of the two rectifying diodes of the first group and the positive end of the rectifying diodes of the second group." Shao at Abstract. Furthermore, it is inherent that an LED string has a first end and a second end. *See* Schubert Decl. at ¶ 81. Chao Tai concedes that Shao discloses an LED light string. *See* Pl. SDF (Dkt. No. 64-1) at ¶ 35.

68. As stated previously, Shao discloses "**said first end being connected to said first power adaptor to receive said high DC voltage and said second end being connected to said second power adaptor to receive said low DC voltage so that said LED string is turned on to emit light**," as recited in independent claim 1. As stated above, Shao discloses an alternate configuration and, when this alternative configuration is used, "the direction of the positive and negative ends of LEDs in the LED serial set should also be changed correspondingly." Shao at 3:24-26. Thus, Shao's alternative configuration discloses the first end being connected to the first power adapter to receive a high DC voltage and the second end being connected to the second power adapter to receive a low DC voltage. *See* Schubert Decl. at ¶ 84. When this circuit is completed and power applied, the result would be that the LED string is turned on to emit light. *See id.* In order to emit light, the LED string inherently must be connected to a positive and negative voltage provided by the two power adaptors, *i.e.*, the two split parts of the bridge rectifier. *See id.*

69. Chao Tai confirmed that Shao discloses first and second power adaptors at opposite ends of an LED light string that are equivalent to the first and second power adaptors claimed in the '287 patent, and that are capable of receiving AC current and converting it to DC current to power an LED light string. *See* Exh. I to Lowe's Reply (Yang Deposition Tr. (Dec. 10, 2013)) at 181:5-182:25 (Dkt. No. 70-6); *see also* Pl. SDF (Dkt. No. 64-1) at ¶ 35.

70.     Shao discloses each and every limitation of claim 2 of the '287 patent, either expressly or inherently.  Specifically, Shao discloses "**[t]he high power light string device as claimed in claim 1, wherein said conducting-strip set is electrically plugged by a second plug blade set of a second plug.**"  *See* Schubert Decl. at ¶ 88.  Shao provides "a rear plug 20 that is a common household socket, coupled in parallel to the front plug to enable multiple light strings to be connected to each other from end to end."  Shao at 2:57-60.  As explained above, it is inherent that a rear plug that is a common household socket requires a conducting strip set disposed interiorly.  *See* Schubert Decl. at ¶ 88.  Moreover, when Shao's rear plug is plugged by a second plug blade set of another light string to allow multiple strings to be connected end-to-end, the conducting strip set inherently is electrically plugged by a second plug blade set of a second plug.  *See id.*

71.     Chao Tai failed to identify any limitation of claim 2 of the '287 patent that is not disclosed by Shao, other than to indicate that certain limitations of claim 1, from which claim 2 depends, are not disclosed by Shao.  *See* Pl. SDF (Dkt. No. 64-1) at ¶ 50.  Thus, Chao Tai has conceded that if independent claim 1 is anticipated by Shao, then dependent claim 2 is also anticipated by Shao.

72.     Shao discloses each and every limitation of claim 3 of the '287 patent, either expressly or inherently.  Specifically, Shao discloses "**[t]he high power light string device as claimed in claim 1, wherein said conducting-strip set is electrically connected to said second power adaptor**."  *See* Schubert Decl. at ¶ 91.  Shao provides "a rear plug 20 that is a common household socket, coupled in parallel to the front plug to enable multiple light strings to be connected to each other from end to end."  Shao at 2:57-60.  As explained above, it is inherent that a rear plug that is a common household socket requires a conducting strip set disposed interiorly.  *See* Schubert Decl. at ¶ 91.  Moreover, Shao's conducting strip set inherently must be electrically connected to the second power adaptor to enable multiple light strings to be connected to each other from end-to-end.  *See id.*

73.     Chao Tai failed to identify any limitation of claim 3 of the '287 patent that is not disclosed by Shao, other than to indicate that certain limitations of claim 1, from which claim 3 depends, are not disclosed by Shao.  *See* Pl. SDF (Dkt. No. 64-1) at ¶ 53.  Thus, Chao Tai has conceded that if independent claim 1 is anticipated by Shao, then dependent claim 3 is also anticipated by Shao.

74.     Shao discloses each and every limitation of claim 4 of the '287 patent, either expressly or inherently.  Specifically, Shao discloses "**[t]he high power light string device as claimed in claim 1, wherein said conducting-strip set is electrically connected to said first plug blade set**."  *See* Schubert Decl. at ¶ 94. Shao provides "a rear plug 20 that is a common household socket, coupled in parallel to the front plug to enable multiple light strings to be connected to each other from end to end."  Shao at 2:57-60.  As explained above, it is inherent that a rear plug that is a common household socket requires a conducting strip set disposed interiorly.  *See also* Schubert Decl. at ¶ 94.  Shao discloses that "three wires 301, 302 and 303 are needed for the AC/DC converter of this embodiment of the lighting chain."  Shao at 3:27-28.  The wires 301, 302, and 303 are illustrated in FIG. 3 of Shao as being electrically connected between Shao's plug blade set and Shao's rear plug.  *See* Schubert Decl. at ¶ 94.  Moreover, Shao's conducting strip set inherently must be electrically connected to said first plug set to enable multiple light strings to be connected to each other from end-to-end. *See id.*

75.     Chao Tai failed to identify any limitation of claim 4 of the '287 patent that is not disclosed by Shao, other than to indicate that certain limitations of claim 1, from which claim 4 depends, are not disclosed by Shao.  *See* Pl. SDF (Dkt. No. 64-1) at ¶ 56.  Thus, Chao Tai has conceded that if independent claim 1 is anticipated by Shao, then dependent claim 4 is also anticipated by Shao.

76.     Shao discloses each and every limitation of claim 5 of the '287 patent, either expressly or inherently.  Specifically, Shao discloses "**[t]he high power light string device as claimed in claim 1, wherein said plug and said tail receptacle are**

17

1  driven at the same voltage.” *See* Schubert Decl. at ¶ 97.  Shao provides that “[t]he

2  front plug 10 can be a common household plug that is connected to a source voltage

3  (110 VAC or 220 VAC).”  Shao at 2:55-56.  In addition, Shao discloses that the

4  “device may also include a rear plug 20 that is common household socket, coupled in

5  parallel to the front plug to enable multiple light strings to be connected to each other

6  from end to end.” *Id.* at 2:56-60.  FIG. 3 of Shao, shown above, also shows the front

7  plug 10 and rear plug 20 driven at 110 VAC, *i.e.*, the same voltage.  *See* Schubert

8  Decl. at ¶ 97.  Thus, Shao’s front plug and rear and Shao’s rear plug are in parallel

9  with one another and, therefore, driven at the same voltage.  *See id.*  Moreover, when

10  the plug and the tail receptacle are configured in a parallel circuit, such as that of

11  Shao, they inherently are driven at the same voltage.  *See id.*

12       77.    Chao Tai failed to identify any limitation of claim 5 of the ’287 patent

13  that is not disclosed by Shao, other than to indicate that certain limitations of claim 1,

14  from which claim 5 depends, are not disclosed by Shao.  *See* Pl. SDF (Dkt. No. 64-1)

15  at ¶ 58.  Thus, Chao Tai has conceded that if independent claim 1 is anticipated by

16  Shao, then dependent claim 5 is also anticipated by Shao.

17       78.    Shao discloses each and every limitation of claim 7 of the ’287 patent,

18  either expressly or inherently.  Specifically, Shao discloses “**[t]he high power light**

19  **string device as claimed in claim 1, wherein said plug and said tail receptacle are**

20  **made of plastic material**.”  *See* Schubert Decl. at ¶ 100.  Shao provides that “[t]he

21  rear plug may alternatively be a dummy plug, a piece of plastic or other material

22  acting as an end cap for the LED lighting chain.”  Shao at 2:62-64.  It is an inherent

23  characteristic of LED light string circuits that lack a grounding connection, such as

24  those disclosed in Shao, that they are manufactured with a non-conductive housing,

25  such as plastic.  *See* Schubert Decl. at ¶ 100.  Moreover, it is old and well-known in

26  the art of LED light strings that plug and tail receptacles are made of plastic.  *See id.*

27       79.    Chao Tai failed to identify any limitation of claim 7 of the ’287 patent

28  that is not disclosed by Shao, other than to indicate that certain limitations of claim 1,

1    from which claim 7 depends, are not disclosed by Shao.  *See* Pl. SDF (Dkt. No. 64-1)

2    at ¶ 62.  Thus, Chao Tai has conceded that if independent claim 1 is anticipated by

3    Shao, then dependent claim 7 is also anticipated by Shao.

4        80.    Shao discloses each and every limitation of claim 8 of the '287 patent,

5    either expressly or inherently.  Referring to dependent claim 8, Shao discloses "**[t]he**

6    **high power light string device as claimed in claim 1, wherein each LED of said**

7    **LED string is selected among a white LED, a red LED, a blue LED, a green LED,**

8    **a yellow LED, and a LED of another color**."  *See* Schubert Decl. at ¶ 103.  Shao

9    explains that "LED decorative lighting, with its colorful lights, can be used for

10   decorating effects in the yard and for lighting in the house."  Shao at 1:15-17.

11   Moreover, it is inherent that LED lights are comprised of at least one color, and that

12   color necessarily includes white, red, blue, green, yellow, and/or another color.  *See*

13   Schubert Decl. at ¶ 103.

14       81.    Chao Tai failed to identify any limitation of claim 8 of the '287 patent

15   that is not disclosed by Shao, other than to indicate that certain limitations of claim 1,

16   from which claim 8 depends, are not disclosed by Shao.  *See* Pl. SDF (Dkt. No. 64-1)

17   at ¶ 65.  Thus, Chao Tai has conceded that if independent claim 1 is anticipated by

18   Shao, then C dependent claim 8 is also anticipated by Shao.

19       82.    Chao Tai fails to identify any material factual dispute in opposition to

20   Lowe's clear showing that claims 1-5, 7 and 8 of the '287 patent are anticipated.

21       83.    Accordingly, claims 1-5, 7, and 8 of the '287 patent are anticipated by the

22   Shao patent.  Claims 1-5, 7, and 8 of the '287 patent are, therefore, invalid.

23   **VII.   CONCLUSION**

24       84.    For the above reasons, Shao discloses each and every element of claims

25   1-5, 7, and 8 of the '287 patent.

26       85.    Thus, claims 1-5, 7, and 8 of the '287 patent are invalid as anticipated by

27   Shao.

28

1    86.    Therefore, Defendants Lowe's and LedUp are entitled to summary

2    judgment of invalidity as a matter of law.

3

4    DATED:  __March 4, 2014__

5

6                                    Hon. Manuel L. Real

7                                    UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW IN SUPPORT OF SUMMARY JUDGMENT OF INVALIDITY